UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

FRANNET, LLC                                                                     Plaintiff

v.                                                             No. 3:20-cv-203-BJB-CHL

DOUGLAS GRANT, et al.                                      Defendants

\* \* \*

## MEMORANDUM OPINION & ORDER

       This is a contract dispute between a Kentucky plaintiff and Nevada defendants regarding a contract struck with a Colorado counterparty. That contract contains a Colorado forum-selection clause. The defendants objected to personal jurisdiction and venue in the Western District of Kentucky because the contract routes all disputes to Colorado state or federal courts. The law favors enforcing such provisions, and no good reason counsels against enforcing this one. So the Court transfers the case to the U.S. District Court for the District of Colorado.

I.

       According to the facts alleged in the Complaint, the plaintiff, FranNet, is a franchise-consulting business based in Kentucky. DN 1 at 2–3. The company identifies potential franchisees and introduces them to franchisors in exchange for a fee. Motion to Dismiss (DN 10-1) at 1–2. A FranNet licensee called Wahoo, Inc., which does business as "FranNet Mountain West" is a Colorado-based company that connected FranNet with consultants who could help it recruit franchisees and franchisors. Employment Agreement (DN 1-1) at 1; MTD at 1. Wahoo entered into an agreement with Douglas Grant, a Nevada citizen who agreed to serve as a Wahoo consultant, which "operat[ed] under [a separate] agreement with FranNet, LLC." S*ee* Employment Agreement at 1; *id.* at 17. Grant's territory covered all of Nevada with the exception of the Reno area. *See* Grant Declaration (DN 10-2) ¶ 11.

       Apart from his employment agreement, Grant also signed a restrictive covenant with Wahoo that contained a two-year non-compete clause and an agreement not to disclose any of FranNet's or Wahoo's proprietary information. *See* Restrictive Covenant (DN 1-2) ¶¶ 1–5. This agreement expressly recognized FranNet as "a third party beneficiary" that had "the independent right to enforce th[e] Agreement as if an original party." ¶ 12. It also contained a choice-of-law clause providing that Colorado law applied, as well as a forum-selection clause requiring that "if any dispute arises out of this Agreement, such dispute must be resolved exclusively in the state and federal courts in Denver County, CO." ¶ 7.

1

Grant worked with Wahoo and FranNet for several years, visiting the Commonwealth for additional trainings and support in 2017, 2018, and 2019. *See* Brief in Opp. (DN 15) at 2; MTD at 13. And his work continued until November 2019, when Grant and Wahoo decided to reform their contract in hopes of escaping the commission FranNet took from each deal. *See* Grant Decl. ¶ 12; MTD at 5. Grant and Wahoo assigned Grant's contractual obligations to Grant Group (a company owned by Mr. Grant) and modified the contract to remove references to the noncompete provision and other restrictive clauses. Grant Decl. ¶¶ 14–15; MTD at 5–6.

Then, according to FranNet, Grant performed work for the International Franchise Professionals Group—a direct competitor of FranNet. *See* Compl. ¶¶ 41–42. FranNet also says that between November and December of 2019, Grant disclosed its secret corporate information by engaging an IT firm to transfer all the information he obtained from FranNet——regarding customers, leads, and emails—to his personal server. ¶ 45. Similarly, FranNet alleges that Grant asked Google for all the information and emails from the account he used for FranNet work—dgrant@gmail.com. ¶ 46. All of this, FranNet alleges, violated Grant's obligations not to compete or disclose confidential information.

So FranNet sued Grant and his company for breach of contract, violation of the Federal Defend Trade Secrets Act (18 U.S.C. § 1836 et seq.), misappreciation of trade secrets under Kentucky and Nevada law, conversion, and various other contract and tort claims under state law. *See* Compl. at pp. 11–14. Shortly thereafter, the Defendants filed a motion to dismiss based on lack of personal jurisdiction, forum non conveniens, and venue. DN 10.

## II.

A trial court may exercise its discretion, in response to a motion to enforce a forum-selection clause, by construing the request as a motion to transfer venue under 28 U.S.C. § 1404(a). *See First of Mich. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998); *Carver v. Knox County*, 887 F.2d 1287, 1291 (6th Cir. 1989); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). The federal venue statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." § 1404(a).[1] And "[w]hen the parties have agreed to a valid forum-

---

[1] Defendants' also asked the Court to dismiss this case for lack of personal jurisdiction. But because this Order resolves the case on non-constitutional grounds, no need remains to address Defendants' argument that the Due Process Clause deprives this Court of jurisdiction. *See, e.g., Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case." (quotation omitted)); *Muller Optical Co. v.*

selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co., v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013).

Federal courts enforce forum-selection clauses absent a strong showing that they should be set aside. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). The first question is whether the clause is valid and enforceable. *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Courts within the Sixth Circuit answer that by considering "(1) whether the clause was obtained by fraud, duress or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.*

Generally a decision whether to transfer venue under § 1404(a) is analyzed in light of a series of public and private interests that the transfer might implicate. *See Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1136–37 (6th Cir. 1991). Private considerations include party "convenience and the convenience of potential witnesses." *Id.* at 1137. But if the clause is valid and enforceable, then the parties have no right to "challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses." *Atl. Marine*, 571 U.S. at 64. Instead, the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.*

This presumption, however, does not disturb the requirement that a court consider the *public*-interest factors that may militate in favor of hearing the case in the jurisdiction selected by the plaintiff, rather than the one selected in the contract. *See id.* Those factors include (1) the relative congestion in the two courts of the two forums; (2) the public's interest in having localized controversies decided at home; and (3) relative familiarity of each court with the law. *Id.* at 62 n.6. This public-factor-only review is much more circumspect than a typical § 1404(a) review, which considers both private convenience factors and public interest. *Id.* at 64. "Although it is 'conceivable in a particular case' that the district court 'would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause,'" the Supreme Court has recognized that "such cases will not be common." *Id.* at 65 (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 30–31 (1988)).

---

*EEOC*, 743 F.2d 380, 386 (6th Cir. 1984) ("The duty to avoid decisions of constitutional questions ... [is] based upon the general policy of judicial restraint.").

A.

The first question here is whether the forum-selection clause is enforceable against FranNet, a third-party beneficiary identified by name throughout a contract it did not sign.[2]

Forum-selection clauses may bind non-signatories if they are "so 'closely related' to the dispute that it becomes 'foreseeable' that [they] will be bound." *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997) (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)); *see Wilson v. 5 Choices*, 776 F. App'x 320, 329 (6th Cir. 2019). Many courts in this circuit have applied this rule to enforce forum-selection clauses against third-party beneficiaries. *See, e.g.*, *Wiedo v. Securian Life Ins. Co.*, No. 3:19-cv-97, 2020 WL 5219536, at *6 (E.D. Ky. Sept. 1, 2020) (citing *Baker* and transferring case involving non-signatory); *Washburn v. Garner*, No. 5:04-cv-229, 2005 WL 1907530, *11 (W.D. Ky. Aug.10, 2005) (same); *Veteran Payment Sys., LLC v. Gossage*, No. 5:14-CV-981, 2015 WL 545764, at *7 (N.D. Ohio Feb. 10, 2015) (same); *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-1054, 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010) (same); *Farina v. Sirpilla RV Centers*, 5:18-cv-2734, 2019 WL 2436987, at *5 (N.D. Ohio, June 11, 2019) (enforcing forum-selection clause against non-signatory when it was "foreseen that it might be bound").

Foreseeability depends on the totality of the circumstances. Courts ask "whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute." *Regions Bank,* 2019 WL 908753 at *6.

FranNet's situation meets that standard quite readily. The contract expressly designates FranNet as the ultimate "beneficiary of th[e] Agreement" and vests the company with "the independent right to enforce th[e] Agreement as if an original party." Restrictive Covenant ¶ 12. Further, the contract expressly grants FranNet the right to restrict Grant's ability to disseminate FranNet's confidential information or to compete against the company for a period of two years. ¶¶ 1–5. The contract also grants FranNet the right to seek injunctive relief against Grant for any violation of any term. ¶ 9.

Under binding Sixth Circuit caselaw, therefore, the contract's forum-selection clause binds FranNet. The contract expressly anticipates FranNet's right to enforce the contract's terms against Grant, and also anticipates such disputes being heard in

---

[2] FranNet's brief does not raise, and therefore forfeits, any argument against the enforceability of the contract generally or the parties' agreement to the forum-selection clause specifically. *See United States v. Layne*, 192 F.3d 556, 566–67 (6th Cir. 1999). To the contrary, the crux of FranNet's case is that Grant violated other terms (non-compete and non-disclosure) of this same contract. Compl. at 11–13. FranNet challenges the forum-selection clause as a matter of fairness and convenience under the standards set forth in *Atl. Marine*, 571 U.S. 49 and *Wong*, 589 F.3d 821. *See* Brief in Opp. at 12–18.

Colorado.  *See* Restrictive Covenant ¶¶ 7, 12; *Baker* 105 F.3d at 1106; *Regions Bank*, 2019 WL 908753 at *6.

B.

Since the forum-selection clause applies to FranNet's lawsuit, the Court must next determine whether the clause is enforceable under the principles announced by the Sixth Circuit in *Wong*, 589 F.3d at 828.

*First*, FranNet has not argued that the forum-selection clause was obtained by fraud, duress, or other unconscionable means.   *Contra Great Earth Comps., Inc. v. Simons*, 288 F.3d 878, 884, 890 (6th Cir. 2002) (upholding denial of venue-transfer based on fraudulent forum-selection clause).

*Second*, nothing suggests a federal district court in Colorado would adjudicate this case with any less care or precision than this Court, much less that it would "ineffectively or unfairly handle this suit." *Wong*, 589 F.3d at 828.  The Sixth Circuit has enforced forum-selection clauses specifying English, German, and Brazilian forums notwithstanding challenges to the effectiveness or fairness of those forums. *See id.* at 829 (collecting cases).  And district courts in this circuit routinely transfer venue to other district courts around the country.  *See, e.g.*, *Wiedo*, 2020 WL 5219536 at *8 (transfer from E.D. Ky. to N.D. Cal.); *Veteran Payment Systs.*, 2015 WL 545764 at *10 (transfer from N.D. Ohio to M.D.N.C.); *Farina*, 2019 WL 2436987 at *6 (transfer from N.D. Ohio to N.D. Ind.).

*Third*, "the plaintiff must show that enforcement of the clause would be so inconvenient that its enforcement would be unjust or unreasonable." *Wong*, 589 F.3d at 829.  In *M/S Bremen v. Zapata Off-Shore Co.*, the Supreme Court explained that a party "seeking to escape his contract" must show that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."  407 U.S. 1, 18 (1972).

FranNet argues the forum-selection clause is inconvenient, and thus unenforceable, because none of the parties are domiciled in Colorado.  This would unnecessarily require travel by lawyers and witnesses for both parties, according to FranNet's Brief in Opposition (DN 15) at 13–14.  As a preliminary matter, FranNet may not assert the Defendants' convenience as a reason to deny the Defendants the agreed-to forum.  *See Bremen*, 407 U.S. at 16 ("It is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable."); *Moses*, 929 F.2d at 1138–39 (rejecting argument that financial or travel inconveniences barred enforcement of forum-selection clause).  Especially when the Defendants themselves are the ones who want to litigate the case elsewhere.

FranNet also claims—without citation or documentation—that transfer is unreasonable because the evidence and witnesses needed to prove the misappropriation claim are located in Kentucky.  *See* Brief in Opp. at 12–15.  This appears to be entirely conjectural.  The conduct at issue involves an alleged electronic

theft. One claim focuses on data taken from a FranNet server in Kentucky; the other on emails stored on a Google server found who-knows-where. Compl. ¶¶ 45–46.

FranNet identifies no Kentucky witnesses who would need to travel to Colorado, no evidence that would need transporting, and no reason why either would prove unreasonably difficult in any event. The pleadings and briefs suggest witnesses could come from at least three states: Kentucky (FranNet's home), Nevada (Grant and Grant Corp.), and Colorado (Wahoo, Inc.). Given this distribution and uncertainty, the Court cannot say that litigation in Colorado would be "so gravely difficult and inconvenient that [FranNet] will for all practical purposes be deprived of [its] day in court." *Bremen*, 407 U.S. at 18. "[E]nforcement of a forum selection clause would not be unreasonable where"—as here—"the opposing party failed to produce any evidence that it was exploited or unfairly treated." *Wong*, 589 F.3d at 829; *see also Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994) (same); *Ellenberger v. Alphabet, Inc.*, No. 3:19-cv-527, 2020 WL 11772628, at *4 (W.D. Ky. July 17, 2020) (similar).

C.

The next question is how the Court will enforce this valid and enforceable forum-selection clause. *See Kelly v. Liberty Life Assur. Co.*, No. 17-139, 2018 WL 558643, at *3 (E.D. Ky. Jan. 25, 2018). The Defendants ask the Court to dismiss the case under the forum non conveniens doctrine, apparently with the expectation that FranNet would try to refile in Colorado state court. *See* MTD at 22–28. FranNet disagrees, arguing that transfer to the U.S. District Court in Colorado under § 1404(a) would represent the most desirable course if the clause proves enforceable. *See* Brief in Opp. at 17–18.

The answer turns on the identity of the destination court. Transfer to a different district under § 1404(a) is "a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine*, 571 U.S. at 59. "If, however, a forum-selection clause indicates that a matter should be heard by a state or foreign court, then forum non conveniens is the appropriate method of enforcement." *Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F.4th 209, 215 (6th Cir. 2021) (quotation omitted).

In this case, the forum-selection clause allows for litigation: "in the *state and federal* courts in Denver County, Colorado." Restrictive Covenant ¶ 7 (emphasis added). In other words, either transfer to the U.S. District Court for the District of Colorado under § 1404(a) or dismissal for forum non conveniens would satisfy the parties' agreement. And the Sixth Circuit has recognized that "the decision of whether to dismiss or transfer is within the district court's sound discretion." *Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998); *see, e.g.*, *Smith v. Aegon Companies Pension Plan*, 769 F.3d 922, 933–34 (6th Cir. 2014) (same); *Bradley v. D&B Trucks & Equip., LLC*, No. 1:16-CV-00159, 2017 WL 4102483, at *4 (W.D. Ky. Sept. 15, 2017) (same); *Podesta v. Hanzel*, 684 F. App'x 213, 216 (3d Cir. 2017) (recognizing inherent authority for district court to choose between transfer and dismissal).

Transferring this long-pending suit makes more sense here to avoid any questions of timeliness if FranNet had to refile. A transfer preselects a federal forum on FranNet's behalf, but FranNet selected a federal forum when it sued in this court, and noted its desire to remain in federal court. *See* Brief in Opp. at 17–18. Given a choice between transfer or dismissal, this Court agrees with the Third Circuit that "it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss." *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 299 (3d Cir. 2001). That's so especially when the forum-selection clause contemplates either a state or federal forum. *Id.*; *see, e.g., Williams v. CIGNA Corp.*, No. 5:10-cv-155, 2010 WL 5147257, *6 (W.D. Ky. Dec. 13, 2010) (denying motion to dismiss in favor of sua sponte transfer under § 1404(a)); *Ellenberger*, 2020 WL 11772628 at *5 n.2 (transferring case to federal court, rather than dismissing, given that forum-selection clause permitted state or federal forum).

D.

Finally, the Court must consider whether the public factors set forth in *Atlantic Marine* tilt against a transfer. *See* 571 U.S. at 62 n.6.

Those factors include (1) the relative congestion in the two courts of the two forums; (2) the public's interest in having localized controversies decided at home; and (3) relative familiarity of each court with the law. *Id.*

For the first factor, according to statistics published by the Administrative Office of the United States Courts, the District of Colorado has a median time interval for case resolution of 7.6 months, while the Western District of Kentucky's median interval is slightly higher at 9.1 months. *See* U.S. DISTRICT COURTS—CIVIL FEDERAL JUDICIAL CASELOAD STATISTICS, TABLE C-5 (March 31, 2021), *available at* https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2021/03/31. This prong leans in favor of transferring the case to Colorado.

Second, the public's interest in the case is diffuse because it more-or-less occurred online in violation of a contract signed in Colorado for work performed in Nevada by a Nevada citizen. *See* MTD at 2–3. FranNet claims Grant's theft of proprietary information from a protected server in Kentucky provides a strong public interest in retaining the case in a Kentucky-based federal court. Brief in Opp. at 3. But Nevadans would have a similar interest in the case given the subject matter of the contract and the Defendants' domicile. Coloradoans may too be interested in the case given that the contract at issue was executed there. No one state has an overwhelming or unique interest in the case—at least the case as framed by the pleadings at this stage. *See Payment Alliance Int'l, Inc. v. Deaver*, 3:17-cv-693, 2018 WL 661491, at *6 (W.D. Ky. Feb. 1, 2018) (finding "public-interest" prong neutral when multiple states had similarly compelling interest). This factor is effectively a wash.

Last, the Colorado court has at least as much expertise as this Court in the federal legal questions presented. Any state-law claims "aris[ing] out of" the contract presumably will be governed by Colorado law in accordance with the terms of the forum-selection clause. Restrictive Covenant ¶ 7 ("Colorado law governs this Agreement without regard to its principles of conflicts of law."). FranNet concedes that the contract claims are governed by the Colorado choice-of-law provision. *See* Brief in Opp. at 16–17. The company, however, argues that its tort claims are governed by another state's law—presumably Kentucky's. *See* Compl. at pp. 11–14. FranNet's argument that a Colorado court would limit the choice-of-law provision to only contract counts, while applying Kentucky's law to the others, assumes the outcome without citation. *See, e.g., Sensoria, LLC v. Kaweske*, No. 20-cv-942, 2021 WL 103020 at *8–9 (D. Colo. Jan. 12, 2021) (collecting Colorado choice-of-law cases); *Bio Med Techs. Corp. v. Sorin CRN USA, Inc.*, No. 14-cv-154 2015 WL 428580 at *1–2 (D. Colo. Jan. 30, 2015) (same). But at this juncture, FranNet's citationless assumptions do not surmount the Court's determination that Colorado law certainly applies to some, and perhaps all, off of FranNet's claims. In this case, as in most, therefore, "the interest of justice is served by" giving effect to a preexisting contractual agreement by transferring it to Colorado. *Atl. Marine*, 571 U.S. at 66 (quotation omitted).

## ORDER

The Court agrees with the Defendants that this Court is an inappropriate forum in light of the forum-selection clause. DN 10. But the Court declines to dismiss the case entirely, and instead transfers this case to the U.S. District Court for the District of Colorado, as anticipated by the forum-selection clause, 28 U.S.C. § 1404(a), and the Plaintiff's fallback request to transfer rather than dismiss this case in the event the Court enforced the clause, *see* Brief in Opp. at 17–18. In light of this transfer, the Court denies Defendants' motion to dismiss for lack of personal jurisdiction (DN 10) as moot.

Benjamin Beaton, District Judge
United States District Court

December 15, 2021

8